## THE PEOPLE *ex rel.* HASBROUCK, *vs.* ULSTER COMMON PLEAS.

A junior judgment creditor is entitled to an order of the court for a *surplus* remaining in the hands of a sheriff on the sale of his debtor's real estate, after satisfying the senior judgments under which the sale was had ; and is not confined to the remedy of redemption.

So a junior judgment creditor may apply to the court to set aside a senior judgment as fraudulent.

Where a feigned issue is awarded by a court of common pleas to try the validity of a senior judgment, this court will not interfere by *mandamus* and direct the order awarding the feigned issue to be vacated.

MOTION for a *mandamus*. *James J. Hasbrouck* applied to the Ulster common pleas for an order directing the sheriff of Ulster to pay over to him the *surplus* of the proceeds of a sale of real property under executions against *James O. Hasbrouck*, on the ground that he was entitled to the same as a judgment creditor of James O. Hasbrouck. The motion was resisted by *John Lounsberry*, who alleged that he also was a judgment creditor of James O. Hasbrouck, and entitled to the surplus, and that the judgment in favor of James J. Hasbrouck was *fraudulent.* The common pleas made an order awarding a feigned issue to try the validity of the judgment in favor of James J. Hasbrouck, who now applied to this court for a *mandamus* directing the common pleas to vacate such order.

On the 29th June, 1835, the real estate of James O. Hasbrouck was sold by virtue of executions against him on judgments docketed on the *eighteenth* and *nineteenth* days of June, 1834, and purchased by John Van Buren, to whom the sheriff executed a deed in June, 1836. Previous to the execution of the deed to Van Buren, to wit, on the 12th December, 1835, the same real [629] estate was sold by virtue of three executions, *two* of which were issued on judgments obtained against James O. Hasbrouck, of a date *anterior* to the judgments under which Van Buren purchased, and the third was issued on a judgment obtained by Lounsberry, on the 28th October, 1835. The proceeds of the sale were so large, that after satisfying the two executions a considerable sum was left in the hands of the sheriff, which Lounsberry claimed should be applied in satisfaction of his judgment obtained in October, 1835. On the other hand, *James J. Hasbrouck* claimed that the *surplus* should be applied in satisfaction of the judgment in his favor, which was obtained on the *seventeenth* day of June, 1834. The sheriff retained the *surplus* in his hands, awaiting the order of the court. An application was accordingly made to the Ulster common pleas, from which court the three last executions had issued, which resulted in the above order for a feigned issue.

*M. T. Reynolds*, urged in support of the motion for a mandamus, that Lounsberry was not entitled to be heard in the common pleas on the application of Hasbrouck for an order directing the surplus to be paid to him, the *lien* of his judgment being gone by the sale in June, 1835, and the conveyance under it to Van Buren.

*S. Stevens*, contra, insisted that the order of the common pleas granting a feigned issue could not be reviewed on mandamus ; that the question of the *lien* of Lounsberry's judgment could not properly arise here, because if Hasbrouck's judgment should be found to be fraudulent he would have no claim to the surplus, and the contest then would be between Van Buren and Lounsberry ; that Van Buren was the only person who could object that Lounsberry's judgment was not a lien, and he made no such objection. Besides, he contended that at the time of the second sale, the time for redemption under the first sale had not expired, and consequently Lounsberry's judgment was a lien.

[630]      *By the Court,* COWEN, J. Lounsberry held a lien, and had a full right in virtue of that till Van Buren took his deed in June, 1836. His direct and primary course, it is true, was to redeem : but the land going as it probably did for its full value, and he being obliged to pay the full purchase money to the

sheriff, the surplus would go to the debtor, who might thus apply it to satisfy this alleged fraudulent judgment of the relator, or convert it to his own use. That would be but an indifferent remedy for Lounsberry. The only difference between this case and that of *Van Nest* v. *Yeomans,* (1 *Wendell,* 87,) is, that there, the lien in favor of the junior creditor continued to the time of the motion. Here, owing to delay for some cause, it expired before the motion was decided. It came down to the simple case of a sheriff levying a surplus of the debtor's money on a senior judgment or execution, and then the junior judgment creditor, coming as such without any formal lien, for an order to pay the money to him. (3 *Caines,* 84. 5 *Johns. R.* 163. 7 *Wendell,* 262.) He has an equitable right, indeed an equitable lien, which the court can enforce while the money continues in the hands of its officer. If a formal execution be necessary on Lounsberry's judgment that can issue at any time; but he had one out, which I suppose was in life when the money was paid. (1 *Doug.* 231.)

All this, to be sure, is looking at the question as between *James J. Hasbrouck* and *Lounsberry;* and presupposes that the money belongs to James O. Hasbrouck, and should therefore go to his judgment creditors. In that way both parties choose to regard it. Van Buren, for aught I know, may have rights in this surplus; but the parties and the sheriff have all proceeded so far as if he had none. It is said he may redeem on paying the two older judgments under which the second sale was had, and so will be entitled to the surplus himself, provided James J. Hasbrouck's judgment shall be put out of the way as fraudulent. If Van Buren has rights to the surplus, the sheriff is a trustee for him. (*Every* v. *Edgerton,* 7 *Wendell,* 259, 263.) He is a purchaser under judgments which would protect him against James J. Hasbrouck's claim, if that was fraudulent and void as to creditors. Van Buren claims in the right of some of those cred- [631] itors. A verdict against James J. Hasbrouck's claim may inure to the benefit of Van Buren, and raise a question between him and Lounsberry. But that can be no reason why the fraudulent judgment of James J. Hasbrouck should take the money. It multiplies the claimants adverse to him. His failure would leave the whole surplus to be disposed of as if he or his judgment had never been. Be it Lounsberry's or be it Van Buren's, it is not his. To warrant an order for paying the money over to James J. Hasbrouck, his equity should appear to be plain. (*Williams* v. *Rogers,* 5 *Johns. R.* 163.) All the other judgments, and there were 10 or 12 in the whole, are admitted to have been honest. James J. Hasbrouck, if his judgment was a fraud, cannot be allowed to take the money as against any of them or any person claiming under them. The court of common pleas have a right to hold on to the surplus in their discretion, for the satisfaction for all such claims, till they are satisfied that the relator's claim is valid. The court may interfere in a summary way, on motion by any junior judgment creditor, and set aside a senior fraudulent judgment which stands upon the record. It is enough that it may come in his way and interrupt his present or future proceedings in the collection of his own judgment.

I cannot see enough in this case to warrant an interference by mandamus. I think the common pleas are proceeding correctly. Motion denied, with costs.